23-6144-cr
*United States v. McKenzie*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of July, two thousand twenty-four.

PRESENT:
> AMALYA L. KEARSE,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                              23-6144

GREGORY McKENZIE, AKA SEALED DEFENDANT 1,

> *Defendant-Appellant*.[*]

---

[*] In the indictment and the judgment, McKenzie's name is shown as "Gregory." Although defense counsel informed the district court—in colloquy at a plea hearing—that McKenzie's actual first name is "Greg," he did not follow the court's suggestion to take an appropriate step to have McKenzie's name corrected in the indictment. Thus, the record shows defendant's name as "Gregory McKenzie" not only on the indictment but also on the judgment and other official court records. We are constrained to spell the defendant's name as it appears in the indictment and the judgment in the district court. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S 555, 555 n.* (1980).

FOR APPELLEE:
DANIEL H. WOLF, Assistant United States Attorney (Aline R. Flodr, Jonathan E. Rebold, and Stephen J. Ritchin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:
PAUL J. ANGIOLETTI, ESQ., Staten Island, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on February 9, 2023, is **AFFIRMED**.

Defendant-Appellant Gregory McKenzie appeals from the district court's judgment of conviction following his guilty plea to one count of obstruction of justice, arising from false statements that McKenzie, a former correctional officer, made during a voluntary interview with federal agents investigating the smuggling of a loaded firearm into the Metropolitan Correctional Center ("MCC") in Manhattan, New York. The district court sentenced McKenzie principally to thirty-six months of imprisonment, to be followed by three years of supervised release. On appeal, McKenzie primarily argues that the imposition of this sentence, which was above the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of twenty-one to twenty-seven months, was procedurally unreasonable because: (1) it was improperly based on McKenzie's failure to correct his false statements and volunteer to law enforcement his knowledge of the underlying firearm offense; and (2) the district court varied upward based on considerations that were already the subject of the Guidelines enhancements, without explaining why the Guidelines

2

calculation did not adequately account for them. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We apply a "deferential abuse-of-discretion standard" in reviewing a sentence for procedural error. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). A district court's reliance on an impermissible factor renders a sentence procedurally unreasonable. *See United States v. Park*, 758 F.3d 193, 199 (2d Cir. 2014). Because McKenzie did not object to the alleged procedural errors during sentencing, we review only for "plain error." *See United States v. Rosa*, 957 F.3d 113, 117 (2d Cir. 2020). To show plain error, a defendant must show that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. at 117–18 (quoting *United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019)).

## I. Consideration of McKenzie's Level of Remorse

McKenzie argues that the district court partially based its above-Guidelines sentence on his failure "to initiate contact with law enforcement after the interview, tell them that he lied to them, and provide them with potentially incriminating evidence," in violation of his Fifth Amendment privilege against self-incrimination. Appellant's Br. at 26. Moreover, McKenzie contends that the district court improperly found that he lacked remorse based on his failure to cooperate with law enforcement. As McKenzie notes, we have held that "[i]t is improper to increase a defendant's sentence due to his silence." *United States v. Stratton*, 820 F.2d 562, 565

3

(2d Cir. 1987). However, we "draw[] a distinction between increasing the severity of a sentence for a defendant's failure to cooperate and refusing to grant leniency." *Id.* at 564. It is not "clear or obvious" on this record that the district court's consideration of this issue resulted in an impermissible enhancement of McKenzie's punishment. *Rosa*, 957 F.3d at 117.

At sentencing, the district court observed that "a substantial part" of McKenzie's argument for a downward variance under the Guidelines to a noncustodial sentence "relate[d] to remorse and acceptance of responsibility." App'x at 113. Indeed, the written sentencing submission from McKenzie's counsel centered on the claims that he was "wholly" and "extremely remorseful," "readily admitted his guilt," felt "anguish," and "accept[ed] full and complete responsibility." App'x at 47–49, 51, 53. More specifically, it sought leniency based on McKenzie's conduct following the crime, arguing that "his conduct since his arrest" makes it "certain" that he will not recidivate, because he is "extremely apologetic to law enforcement" and in "*the process of fixing his . . . mistake*." App'x at 50–51 (emphasis added); *see also* App'x at 58 (McKenzie's sentencing letter) ("I take full responsibility for my actions. I am truly sorry and very remorseful . . . . [E]very day I look in the mirror, I am reminded of how my action let [others] down . . . . I have started a new direction in my life[.]"); App'x at 100–01 (McKenzie's oral statement at sentencing) ("It was a huge mistake. I'm extremely remorseful. I'm extremely remorseful. I'm regretful. . . . Given the opportunity to go back, I wouldn't be here right now. I would have d[one] the right thing.").[1]

Observing that a substantial part of the argument presented to it related to remorse and acceptance of responsibility, the district court responded to this contention by "examin[ing] the

---

[1] McKenzie's counsel also argued, *inter alia*, for leniency based on the absence of victim impact. *See* App'x at 99.

acceptance of responsibility in this case" and asking whether that acceptance of responsibility "really happened to a great extent, one that would warrant an exceptional consideration." App'x at 113. In assessing this issue, the district court first noted that McKenzie had minimized his offense conduct on multiple occasions, including at his guilty plea, where instead of acknowledging that he lied to officers during his interview, he said he "did not choose to answer" their questions. App'x at 89, 114. As to that response, the district court commented:

> Mr. McKenzie was not indicted for not choosing to answer law enforcement's inquiry. I don't think that's a crime. I think you have a right not to answer. That's not what he was indicted for, and that's not what he pled guilty to. It's lying. It's fabricating. It's concealing and obstructing an investigation by reason of those lies. Did he do any better in his letter to me? I don't think so.

App'x at 114. Moreover, addressing McKenzie's claim of remorse and referencing his statement in his letter to the district court regarding looking in the mirror, the district court explained:

> So it was very bad decisions that he's remorseful about. He apologized today. He said he made a serious mistake. He's extremely remorseful. He described it as bad choices. And, again, he's sorry. But what is he sorry for? What is he sorry for? And if you make a bad decision, you make a bad choice, and you get up the next day and you look at yourself in the mirror, what do you do? This is one when you can make it right. You can make it right. . . . Was the circumstance of a gun in the cell of an inmate thought to be so trivial in terms of concern and possible consequences to a brother officer that it was okay to think of number one first, yourself, and the implications for yourself?

App'x at 115. Because of McKenzie's attempt to minimize his crime and the fact that he never corrected his false statement—in which he denied ownership of a burner cell phone that he used to communicate with the inmate who possessed the firearm and that inmate's wife—the district court concluded that McKenzie's acceptance of responsibility was "less than fulsome." App'x at 116. It concluded that, under the Section 3553(a) factors, an above-Guidelines sentence was appropriate "[g]iven the seriousness of the investigation, given Mr. McKenzie's relationship to the

5

investigation, given his position and office, and given what I view as a less than fulsome acceptance of responsibility." App'x at 116. The district court reiterated this conclusion in its written statement of reasons, in which it also noted that it "consider[ed] this circumstance [that McKenzie made no effort to correct the obstruction of justice] *solely as to the degree of remorse, acceptance of responsibility and harm to the victim*." App'x at 126 (emphasis added).

On this record, McKenzie has failed to demonstrate that the district court committed plain error in its consideration of McKenzie's failure to correct his false statement to law enforcement when it assessed his level of remorse and acceptance of responsibility. The district court relied on several factors in justifying the upward variance, only one of which was lack of remorse and acceptance of responsibility. The district court's finding of lack of remorse was, in turn, based only in part on McKenzie's failure to correct his false statements to law enforcement. And although we have stated that a district court may not expressly punish a defendant for non-cooperation, the cases applying that principle are easily distinguished from this case.

As an initial matter, McKenzie never invoked his Fifth Amendment privilege before either the investigating officers or the district court, which bars him from relying upon it here. *See Roberts v. United States*, 445 U.S. 552, 559 (1980); *see also Salinas v. Texas*, 570 U.S. 178, 187 (2013) (plurality opinion) ("We have . . . repeatedly held that the express invocation requirement applies even when an official has reason to suspect that the answer to his question would incriminate the witness."); *Minnesota v. Murphy*, 465 U.S. 420, 428 (1984) ("[N]othing in our prior cases suggests that the incriminating nature of a question, by itself, excuses a timely assertion of the privilege."). Therefore, McKenzie's arguments fail to the extent they rest on an alleged Fifth Amendment violation.

6

We recognize that we have found procedural error in a district court's consideration at sentencing of a defendant's refusal to cooperate even absent an assertion of the Fifth Amendment privilege in the district court, but we have done so only when the sentencing judge's "comments crossed that fine line between showing leniency and punishing a defendant for his silence." *Stratton*, 820 F.2d at 564 (internal quotation marks and citations omitted); *see also United States v. Bradford*, 645 F.2d 115, 116–17 (2d Cir. 1981) ("A defendant's cooperation may, of course, be taken into consideration by a sentencing judge as a mitigating factor tending to evidence his potential for rehabilitation. On the other hand, a sentence may not, because of a defendant's refusal to cooperate, be increased or additional punishment imposed beyond what would otherwise have been meted out." (citation omitted)). We have explained that "even though the distinction [between enhancing a punishment and declining to show leniency] is somewhat illusory, it is the only rule that recognizes the reality of the criminal justice system while protecting the integrity of that system." *Mallette v. Scully*, 752 F.2d 26, 30 (2d Cir. 1984).

Here, the district court justified the above-Guidelines sentence on the basis of multiple factors in addition to lack of remorse, including the need for general deterrence and just punishment, the seriousness of the underlying investigation, and McKenzie's position of trust as a correctional officer. Moreover, the district court's finding of lack of remorse and acceptance of responsibility relied not only on McKenzie's failure to correct his statements but also on his attempt to minimize his offense conduct at his plea allocution and in his statements in mitigation. Thus, any "indication of enhancement" on the basis of McKenzie's failure to come clean "is slight at best." *Mallette*, 752 F.2d at 30; *see United States v. Barnes*, 604 F.2d 121, 154 (2d Cir. 1979)

7

(affirming the sentence where the defendant's lack of cooperation was considered along other factors).

Furthermore, the cases in which we have found procedural error presented markedly different facts. For example, in *Stratton*, the sentencing judge imposed a consecutive sentence for the explicit reason that the defendant refused to cooperate, rather than only because his refusal demonstrated a lack of remorse or related to another argument in mitigation presented by the defendant, and instructed the defendant that she would consider reducing the sentence if he cooperated within 120 days. 820 F.2d at 563–64 ("I think that your sentence probably should be made consecutive for the reason that it might convince you that cooperation with the government is in your best interest . . . . So that in addition to the 15 year sentence you now have a sentence of ten years to follow that."); *see also DiGiovanni v. United States*, 596 F.2d 74, 75 (2d Cir. 1979) (vacating where district court told non-cooperating defendant, "in the light of . . . unwarranted reluctance on your part to assist the [g]overnment and . . . turn away from this kind of crime, I . . . must impose on you a more serious sentence" and provided an opportunity to apply for a reduction in sentence if defendant later cooperated). Similarly, in *United States v. Rivera*, 201 F.3d 99, 101–02 (2d Cir. 1999), the district court "quite explicitly imposed an *additional* five[-]year sentence on [the defendant] for his refusal to cooperate with the authorities" and stated it was "attributing . . . 60 months to [defendant's] failure to assist the government postconviction." *Id.* (emphasis added); *cf. United States v. Harris*, 295 F. App'x 429, 431 (2d Cir. 2008) (summary order) ("[T]he court did not penalize Harris for silence itself; the sentencing court *inferred* from Harris's behavior that he was dangerous and likely to recidivate, and it departed from the Guidelines sentence on that basis.").

8

Finally, McKenzie's reliance on our decision in *United States v. Austin*, 17 F.3d 27, 32 (2d Cir. 1994), is misplaced. In *Austin*, we held that a district court could not deny the three-level reduction applicable for acceptance of responsibility on the basis of the defendant's refusal to assist authorities in the recovery of additional firearms. *Id.* at 30, 32. In doing so, we applied U.S.S.G. § 3E1.1(a) Application Note 1(a), which expressly states that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a) [for acceptance of responsibility]." By contrast, here, the district court did not plainly err in evaluating the defendant's lack of remorse under the Section 3553(a) factors.[2]

Accordingly, we discern no plain error on this record.

## II. Grounds for Upward Variance

McKenzie argues that two factors the district court considered in imposing an above-Guidelines sentence—the specifics of the offense and his position of trust—were already fully accounted for in the Guidelines calculation, and therefore could not have been a valid basis for an upward variance from the Guidelines range. First, McKenzie notes that his offense level for obstruction of justice reflected the specifics of the offense, because it took into account the underlying substantive offense of providing or possessing contraband in prison, which has a specified base offense level of twenty-three "if the object was a firearm or destructive device." U.S.S.G. § 2P1.2(a)(1). Second, he received a two-level increase in the offense level because he "was a law enforcement or correctional officer or employee, or an employee of the Department of

---

[2] Indeed, the district court here applied the three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) as a result of McKenzie's guilty plea.

Justice, at the time of the offense." U.S.S.G. § 2P1.2(b)(1). To be sure, in determining the appropriate sentence, the district court considered related factors, including "the seriousness of the investigation," "McKenzie's relationship to the investigation," and "his position of office." *See* App'x at 116. However, we are unpersuaded by McKenzie's argument that the district court impermissibly double-counted these factors in concluding that the above-Guidelines sentence was warranted based on its consideration of the Section 3553(a) factors.

The sentencing court is permitted to "impose[] a non-Guidelines sentence based upon section 3553(a) factors already accounted for in the Guidelines range" as long as its reasons for imposing that sentence are adequately explained. *United States v. Sindima*, 488 F.3d 81, 87 (2d Cir. 2007), *superseded by statute on other grounds as recognized in United States v. Smith*, 949 F.3d 60, 64 (2d Cir. 2020); *United States v. Sealed Defendant One*, 49 F.4th 690, 698 (2d Cir. 2022); *see also United States v. Ryan*, No. 21-1951-cr, 2022 WL 16842930, at *3 (2d Cir. Nov. 10, 2022) (summary order) ("[T]he district court adequately explained why [the defendant's] reckless conduct was different from an ordinary case covered by the Guidelines enhancement and did not procedurally err in relying on that same conduct in imposing a sentence above the Guidelines range."); *United States v. Grandison*, No. 21-3130-cr, 2023 WL 1940912, at *2–3 (2d Cir. Feb. 13, 2023) (summary order).

Here, the district court adequately explained its reasons for imposing the sentence. It noted in detail, orally at sentencing and in its written statement of reasons, the uncontroverted facts surrounding McKenzie's offense, including that while employed as a correctional officer at MCC, he purchased a prepaid cell phone with cash on the evening of January 30. That night, McKenzie began his shift at the MCC by walking around—rather than through—the metal detector for

10

screening staff, was depicted on video appearing to conceal an object under his arm, and proceeded to the unit where the inmate was housed, and where the loaded firearm, a .22 caliber revolver, was later recovered. On January 31, he used the cell phone to exchange fifty-two text messages and one voice call with an inmate in possession of a contraband phone and ten voice calls with that inmate's wife, and travelled to the Bronx to meet with that inmate's wife. In addition to describing the high stakes of the investigation and McKenzie's relationship to that investigation as a correctional officer, the district court expressly stated in its statement of reasons that "[t]he guideline, as applied to this defendant's conduct, did not capture the seriousness of the crime, the defendant's position of trust, [or] the potential consequences of the obstruction to an important government investigation." App'x at 127. The district court's detailed explanation for its sentence provided sufficient reasoning as to why the relevant Guidelines enhancements, which apply more generally to any "firearm or destructive device" and to any "law enforcement or correctional officer or employee, or an[y] employee of the Department of Justice," U.S.S.G. § 2P1.2(a)(1), (b)(1), did not adequately reflect a proper balancing of all of the Section 3553(a) factors. The district court therefore committed no procedural error, let alone plain error, in imposing a sentence above the Guidelines range based upon these factors.

*   *   *

11

We have considered McKenzie's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Because we affirm the judgment, the request to have the case re-assigned to a different district judge, if remanded, is denied as moot.